**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

_____
                                 )

| | |
|---|---|
| J.W., by and through his next friend, Sebastian Weston, on behalf of himself and all similarly situated students, ) | |
| Plaintiff, ) | Case No. |
| v. ) | |
| PAUL VALLAS, Superintendent of the Recovery School District in his official capacity; LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION, et al., in its official capacity; EDWIN COMPASS, Director of Recovery School District Safety and Security in his official capacity; SCHOOL POLICE OFFICER WILLIS in his individual and official capacities; SCHOOL POLICE OFFICER JANE DOE in her individual and official capacities; DAPHYNE BURNETT, Principal of Sarah T. Reed Elementary School in her individual and official capacities, ) | COMPLAINT-CLASS ACTION |
| Defendants. ) | |

_____)

## COMPLAINT

1.      This is a civil rights class action filed pursuant to 42 U.S.C § 1983 to vindicate the rights of all school children who attend the Sarah T. Reed Elementary School ("Reed Elementary School"), a school operated by the Recovery School District ("RSD"). J.W. is an African-American student who completed the first grade during the 2009-2010 school year. He represents all Reed Elementary School students who are subject to the Defendants' brutal and

unconstitutional policy of executing unreasonable and excessively intrusive arrests and seizures on children who have allegedly violated minor school rules.  As a result of this policy, on multiple occasions, school police officers over-powered J.W. and then seized, handcuffed and shackled him to a chair after he failed to follow directions.  When J.W.'s father implored the school principal to stop these unconstitutional practices, she insisted that school policy required the arrest and seizure of the child.  The principal and a school police officer specifically advised J.W.'s father that the child would be subject to future arrests and seizures at the school.  The abuses suffered by J.W. illustrate that RSD officials have systematically failed to protect elementary school children from a prison-like environment in which armed police officers viciously seize students for minor, non-criminal infractions.

2.      After these incidents, J.W. transformed from an outgoing six-year-old to a fearful and withdrawn child who has difficulty sleeping through the night. He is terrified of attending school and repeatedly expresses the concern that grown-ups with guns may hurt him again.  He is currently under the care of a mental health professional and now lives with ongoing trauma and severe emotional distress.

3.      Plaintiff J.W., individually and on behalf of the Plaintiff class, composed of all students who now attend or who will in the future attend Reed Elementary School, seeks declaratory, preliminary and permanent injunctive relief requiring that the Defendants cease their unlawful policies and practices.  On behalf of himself, J.W. seeks declaratory and injunctive relief and compensatory and punitive damages.

## JURISDICTION

4.      This cause of action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  Jurisdiction in this Court is proper

pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  This Court has jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, as they are so related to the federal claims in this action that they form a part of the same case or controversy under the Constitution and laws of the United States.

**VENUE**

5.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.  This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

**PARTIES**

**REPRESENTATIVE PLAINTIFF**

6.      Plaintiff J.W. is a seven-year-old resident of the city of New Orleans located in Orleans Parish. He is currently enrolled at Sarah T. Reed Elementary School, a school operated by the Recovery School District, and he attended this school during the 2009-2010 school year. He brings this action by and through his father, Sebastian Weston.  At the time of the incidents alleged in this complaint he was a six-year-old first grade student at Reed Elementary School.

**DEFENDANTS**

7.      Defendant PAUL VALLAS is the Superintendent and Chief Executive Officer of the Louisiana Recovery School District ("RSD"), a state school district administered by the Louisiana Department of Education.  Defendant Vallas is responsible for implementing the policies, programs, and laws affecting RSD-operated public schools. Defendant Vallas is sued here in his official capacity only.

8.  Defendant LOUISIANA BOARD OF ELEMENTARY AND SECONDARY EDUCATION ("BESE") is responsible for the oversight of the Louisiana Department of Education and the Louisiana Recovery School District. BESE oversight responsibilities include the approval and adoption of rules, by-laws, and regulations for the discipline of students and for the government of the public elementary and secondary schools and other public schools and programs under its jurisdiction, which shall not be inconsistent with law, pursuant to La. R.S. § 17:7.  Pursuant to La. R.S. § 17:10.5, BESE functions as the local school board for the RSD, promulgating and enforcing local policy and supervising the Superintendent.  Pursuant to La. R.S. § 17.6, BESE has the authority to sue and be sued.  The BESE Board is sued here in its official capacity only.

9.  Defendant EDWIN COMPASS is the Executive Director of the RSD Department of Safety and Security ("Security Department").  Defendant Compass has supervisory authority over all RSD police officers and develops district-wide education training programs, policies and procedures.  Defendant Compass is sued here in his official capacity only. The RSD Operations Manual refers to Employees of RSD's Department of Safety and Security as "law enforcement officers." The Department's website refers to these individuals as "police." The RSD Code of conduct refers to them as "public safety officers."  Pursuant to La. R.S. 40:2401, these individuals perform the duties of peace officers—including making arrests and performing searches and seizures.  Throughout this complaint, these individuals are referred to as "RSD Police Officers" or "school police officers."

10.  Defendant POLICE OFFICER WILLIS is or was an employee of the RSD Security Department at all relevant times.  He is sued here in his official and individual capacities.

11.     Defendant POLICE OFFICER JANE DOE is or was an employee of the RSD Security Department and/or was an employee of the RSD Security Department at all relevant times.  She is sued here in her official and individual capacities.

12.     Defendant PRINCIPAL DAPHYNE BURNETT is an employee of the RSD and the school principal of Reed Elementary School.  Defendant Burnett has administrative and supervisory responsibility over all personnel, administration, and affairs at Reed Elementary School.  She is sued here in her official and individual capacities.

CLASS ACTION ALLEGATIONS

13.     The Plaintiff brings this action on behalf of himself and all other persons who now or in the future will attend Reed Elementary School, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

14.     This class is so numerous that joinder of all members is impracticable. Reed Elementary School has a student population of approximately 600 students, and students transfer in and out of the school during the school year.  The class also includes future members whose names are not known at the present time. Fed.R.Civ. P. 23 (a)(1).

15.     There are questions of law and fact common to the class.  These common questions include the unconstitutional seizure and arrest policies and practices to which the Defendants routinely subject students at Reed Elementary School.

16.     The claims of the named Plaintiff are typical of the claims of the Plaintiff class. As a result of the Defendants' policies and practices, students, including the named Plaintiff and other members of the class, are unlawfully seized, arrested, handcuffed, shackled, and chained to furniture for very minor violations of school rules that do not furnish school officials with reasonable suspicion or probable cause.  Fed. R. Civ. P. 23 (a)(3).

17.     The named Plaintiff will fairly and adequately represent the interests of the class. This Plaintiff possesses a strong personal interest in the subject matter of the lawsuit, and is represented by experienced counsel with expertise in class action, civil rights and other complex litigation. Fed. R. Civ. P. 23 (a)(4).

18.     Defendants have acted on grounds generally applicable to the class in that Defendants' policies and practices of violating students' constitutional rights apply to all class members. Accordingly, final injunctive and declaratory relief is appropriate for the class as a whole. Fed. R. Civ. P. 23 (b)(2).

## STATEMENT OF FACTS

19.     Under clearly established law, school officials are liable for violating students' Fourth Amendment rights when they arrest and seize students without reasonable suspicion or probable cause and when an arrest and seizure are not reasonably related to a legitimate objective and are excessively intrusive in light of the age and sex of the student and the nature of the alleged infraction.

20.     The Reed Defendants (Burnett, Willis, and Doe) clearly acted beyond the scope of their discretionary authority and subjected J.W. to an unlawful arrest and seizure policy that left him chained to a chair on at least two occasions.  The Reed Defendants initiated these arrests and seizures with the intent to punish, humiliate, and intimidate J.W. and other students who violate even very minor school rules.  The Reed Defendants unlawful seizure and arrest policy remains in effect at Reed Elementary School.

21.     The District Defendants (Vallas, BESE, and Compass) acted and continue to act with deliberate indifference to the rights of Reed students by failing to train, supervise and monitor the Reed Defendants.  As a result of the District Defendants' failures, the Reed School

6

officials enacted and continue to enforce an unlawful school-wide policy that requires the unreasonable and excessively intrusive seizure and arrest of students who are alleged to have violated minor school rules.  This policy is exemplified by the abuses inflicted upon J.W.

22.     J.W. is a small child. Standing approximately four feet tall and weighing approximately 60 pounds, he barely reaches the waist of a grown, average sized man.  J.W. enjoys playing basketball, being read to by his parents, playing outside with his friends, and coloring.  Before J.W. attended Reed Elementary, he thrived and had few disciplinary issues.  He was an enthusiastic learner who looked forward to attending school each day.  Now, as a result of the abuses he endured at Reed Elementary School, J.W. suffers from severe emotional distress and fears attending school.

23.     On May 4, 2010, J.W. allegedly failed to follow his teacher's directions.  As a consequence for this minor misbehavior, Defendant Doe arrested J.W. and transported him to an in-school suspension room where he was isolated from his peers and confined with much older students who taunted and teased him.  Inside the in-school suspension room, Defendant Doe forcibly seized J.W. by chaining his ankle to a chair.

24.     Defendant Burnett ordered this seizure and arrest, and Defendants Burnett and Doe acted maliciously, willfully, and with the intent to cause J.W. harm and subject him to punishment, humiliation and intimidation.

25.     For the duration of this arrest and seizure, J.W. was in Defendant Doe's custody. J.W. could not leave the room until Defendant Doe released him.

26.     On May 6, 2010, J.W. and another student argued over a seat in the cafeteria. Eventually, the children began to push each other.

27.     Defendant Willis, an armed school police officer, observed this interaction.  At no time did he attempt to de-escalate the situation.  Instead, he forcibly arrested and seized J.W. and dragged him through the halls to Defendant Principal Burnett's office.

28.     Once inside Defendant Burnett's office, Defendant Willis used force to handcuff, shackle and chain J.W. to a chair.  For the duration of this arrest and seizure, J.W. could not leave the room.

29.     Defendant Burnett ordered Defendant Willis to handcuff and shackle J.W. to a chair.  In taking these actions, Defendants Burnett and Willis acted maliciously, willfully, and with the intent to cause J.W. harm and subject him to punishment, humiliation and intimidation.

30.     J.W. was deeply traumatized as a result of being arrested and chained to a chair for the second time in less than a week.  J.W. attempted to free himself and he struggled against the restraints.  As he moved around, the handcuffs and shackles tightened around his arms and legs, holding the six year-old child in a vice-like grip, which caused severe pain around his wrist and ankle.

31.     Defendants Burnett and Willis left J.W. alone in the office and unsupervised for a period of time.  Eventually, Defendant Willis returned to the office and unchained J.W. and led him to the in-school suspension room where he was subject to further punishment.

32.     At no time before or during the May 4 and May 6 arrests and seizures did the Reed Defendants attempt to secure J.W.'s compliance with school rules by using more reasonable and less intrusive tactics.

33.     J.W.'s parents did not learn about their child's arrest and seizure until later that evening when J.W. complained of extreme pain on his arm and leg.  The Reed Defendants failed to provide the parents with any notice documenting these incidents.

34.     Even before the May 4 and May 6 incidents, J.W.'s parents had serious concerns about Reed's public safety policies.  On a number of occasions, school officials failed to protect J.W. from bullying, isolated him from his peers, placed him in a class room with students more than twice his age and size, and exposed him to poorly trained school police officers who carry guns inside the elementary school. J.W.'s parents met with school officials several times to voice their concerns about the safety and well-being of their child.  On several occasions before the May 4 and May 6 incidents, school officials agreed to reform their practices, but they repeatedly failed to do so.

35.     J.W.'s father met with Reed school officials on May 7, 2010 to discuss the abuses the Defendants inflicted upon his son on May 4 and May 6.  Participants in the meeting included Defendants Burnett and Willis.  Given the school officials' prior unfulfilled promises, Mr. Weston made an audio recording of the conversation so that he could maintain a record of the officials' response.

36.     Defendants Burnett and Willis clearly told Mr. Weston that J.W. would be seized and arrested in the future if he refused to comply with minor school rules.  These Defendants repeatedly affirmed that school policy requires the seizure and arrest of disobedient elementary school students who commit non-criminal violations of school rules.

37.     Defendants Burnett and Willis adamantly refused to use methods more reasonably calculated to obtain compliance with school rules and less intrusive for a six-year-old child— such as a "time out" or a visit to the school social worker.

38.     During this meeting, Defendant Burnett confirmed that, at her direction, J.W. had been seized, arrested, detained and chained to a chair.  When Mr. Weston told the principal that

his son had been handcuffed to a chair, Defendant Burnett responded defiantly "That's what he was—right."

39.     In response to Mr. Weston's request to Defendant Burnett that she cease the practice of seizing, arresting and detaining his son, Defendant Burnett advised the father: "[t]hen you need to tell him to move when we ask him to move."  Defendant Burnett stated that "if you do not move when I ask you to move you are going to be handcuffed." Defendant Burnett's statements clearly demonstrate the unreasonableness of Reed's arrest and seizure policy.  J.W. was arrested and seized despite the fact that he was not suspected of significant wrongdoing. Defendant Burnett's language reveals that she ordered both of J.W.'s arrests and seizures in a willful and malicious attempt to punish, humiliate and intimidate the child because she perceived that he was defying her authority.

40.     At the end of the meeting, Defendant Burnett furnished J.W.'s father with a written statement that reads in part ". . .[J.W.] refused to calm down. Police Officer [Willis] had to handcuff him until he calmed down."  Defendant Burnett then declared that she had decided to impose a three day suspension against J.W.

41.     The Reed Defendants were substantially certain that subjecting children like J.W. to the school's arrest and seizure policy would result in injury — including severe emotional distress.  It is well documented that children who are subjected to excessively intrusive seizures suffer injuries that can last a lifetime.  According to a report issued by national experts on the practice of using fixed restraints[1] on children, "[i]ndividuals. . . describe these events as punitive and aversive, leaving lingering psychological scars.  Children restrained. . .report recurrent nightmares, intrusive thoughts, avoidance behaviors, enhanced startle response. . .even years

---

[1] "Fixed restraint" refers to attaching a child's hands or feet to a fixed object, such as a piece of furniture.  Sue Burrell, *Moving Away from Hardware: The Juvenile Detention Alternatives Initiative on Fixed Restraint* 1 (Feb. 2009), *available at* http://www.jdaihelpdesk.org/Docs/Documents/MovingAwayFromHardware.pdf

after the event.  [These practices]. . .may evoke feelings of guilt, humiliation, embarrassment, hopelessness, powerlessness, fear and panic." Sue Burrell, *Moving Away From Hardware*: *The Juvenile Detention Alternatives Initiative Standards on Fixed Restraint* 2 (Feb. 2009), *available at* http://www.jdaihelpdesk.org/Docs/Documents/MovingAwayFromHardware.pdf (quoting Protection and Advocacy, Inc., *Restraint and Seclusion in California Schools: A Failing Grade* 22-23 (June 2007)).

42.    J.W. suffers from the injuries that commonly plague children who are handcuffed and chained to fixed objects.  J.W.'s counselor has stated in writing that "[J.W] was deeply affected and traumatized by these frightening experiences, as were his parents after finding out how their son was treated. . . J.W.'s parents are significantly concerned for their young son's overall well-being and safety while in the hands of Reed Elementary School staff, particularly since J.W.'s parents have tried to work with this school staff on developing more therapeutic behavioral interventions for their son versus being handcuffed. . . ."

43.    Mr. Weston met with school officials, including Defendant Burnett, in an attempt to discuss his concerns and to protect his son from further abuse at the hands of the Defendants. Instead of working with Mr. Weston on J.W.'s behalf, Defendant Burnett subjected J.W. to a series of retaliatory behaviors that were calculated to chill any further expression or attempt to secure J.W.'s rights.

44.    After Mr. Weston expressed his concerns, Defendant Burnett arbitrarily decided to suspend J.W. for three days in retaliation for Mr. Weston's complaints. Prior to the meeting with the Reed Defendants, Mr. Weston had not received notice of any disciplinary action against his son.  School officials did not send J.W. home with a notice of suspension on May 4 or on

May 6. Defendant Burnett did not decide to suspend the first grader until his father made it clear that he intended to hold her and her staff accountable for violating J.W.'s rights.

45.     On May 10, 2010, two local news outlets, ABC 26 WGNO-TV and the Times-Picayune, ran stories about the abuse  J.W. suffered at Reed Elementary.

46.     On May 11, 2010, Defendant Burnett ordered her staff to bombard the Weston household with over twenty automated phone calls that reported alleged school rule violations committed by J.W.  These alleged violations date back to November 2009.  Prior to May 11, Reed Elementary officials had provided J.W.'s parents with notice of only one of these infractions.  These calls were intended to annoy and harass J.W. and his father in retaliation for speaking publicly about the treatment J.W. received at the hands of the Defendants.

47.     As a direct and proximate result of the actions of Defendants Willis, Doe, and Burnett, J.W. suffered physical injury, including bruises, pain and extreme discomfort. The Defendants' actions also caused J.W. humiliation and extreme mental anguish.  J.W. lives in fear that he will be subjected to these unlawful practices repeatedly in the future.

48.     The media published a series of stories documenting the abuse J.W. suffered and the Defendants' failure to protect him from further harm.   The public outrage generated by these stories demonstrates that the community found the Defendants' policy and practice to be beyond the standards of decency.

49.     Defendants' actions violate national standards governing law enforcement conduct. The International Association of Chiefs of Police (IACP), the premiere police organization in the United States, issues standards, model policies, and guidance for police departments across the country.  IACP standards and polices do not allow for the handcuffing, chaining and shackling of a small elementary school student.

50.     IACP policy states that "officers may use only the level of force that is objectively reasonable to bring an incident under control."

51.     The IACP policy focuses on the importance of graduated sanctions in the treatment of youth and it discourages the use of enforcement mechanisms typically used with adults—like handcuffs and shackles—on young children.

52.     The Commission on Accreditation of Law Enforcement Agencies (CALEA) is a credentialing authority with a mission to "improve the delivery of public safety services primarily by maintaining a body of standards developed by public safety practitioners, covering a wide range of up-to-date public safety initiatives; establishing and administering an accreditation process and recognizing professional excellence.

53.     CALEA Standard 1.3 requires that "personnel will only use the force necessary to accomplish lawful objectives."

54.     CALEA Standard 44 states "when dealing with juveniles, law enforcement officers should always make use of the least coercive among reasonable alternatives, consistent with preserving public safety, order and individual liberty."

55.     The commentary to CALEA standards 44.2.1 provide "in keeping with the doctrine of *parens patriae*, e.g. that the state plays the role of parent to the child rather than adversary, agencies should seek the least forceful alternatives when determining disposition of cases involving juveniles."

56.     Arresting, seizing, handcuffing and shackling a six-year-old child to a chair is an aberrant law enforcement and behavioral management practice.  An objectively reasonable school principal and school police officer know that it is unlawful to seize and arrest a six-year-old child for allegedly violating a minor school rule by handcuffing and shackling the child to a

chair.  Similarly, an objectively reasonable school principal and school police officer know that it is unlawful to subject students to arrests and seizures solely for the purpose of punishment, humiliation and intimidation.

57.     Under Louisiana Law, six-year-old children cannot be arrested or held liable for violations of the criminal code. La. R.S. 14:13.  Thus, it is clear that the Reed Defendants lacked reasonable suspicion or probable cause to believe that J.W. committed a criminal act.  As a result, the Reed Defendants' actions constitute an unlawful arrest under the Fourth Amendment to the U.S. Constitution.

58.     When the Defendants detained J.W. by chaining him to a chair, they subjected him to an unreasonable and excessively intrusive seizure that was calculated solely to punish, humiliate and intimidate.  As a result, the Defendants' actions constitute an excessively intrusive seizure in violation of the Fourth Amendment to the U.S. Constitution.

59.     The Reed Defendants developed, enforced, and continue to enforce the abusive and unlawful arrest and seizure policy and practice described above. In doing so, the Reed Defendants acted beyond the scope of their discretionary authority in a malicious and willful manner that was deliberately calculated to cause harm to J.W. and subject him to punishment, humiliation and intimidation.

60.     By subjecting J.W. to an unreasonable and excessively intrusive seizure and arrest, the Reed Defendants intentionally and maliciously deprived J.W. of his federal constitutional rights.

61.     J.W. and the proposed class he represents suffer a real and immediate threat that they will be subjected to the Reed Defendants' unlawful arrest and seizure policy.  Defendants Willis and Burnett have repeatedly stated that J.W. will be subjected to this policy in the future.

These Defendants have also pledged to enforce this policy against all Reed students who violate minor school rules.

62.    The District Defendants have ultimate responsibility for ensuring that Recovery School District schools operate in compliance with state and federal law.   The District Defendants have acted with deliberate indifference in their persistent failure to train, supervise and monitor Reed Elementary School.   As a result of the District Defendants' actions and unlawful arrest and seizure policy, Reed students have suffered injuries and will in the future suffer further injuries and infringements of their constitutional rights.

63.    The RSD School Police Operations manual is merely a re-tread of the New Orleans Police Department manual.   The manual fails to include information school police officers need to lawfully execute their duties, including information about how to de-escalate situations involving young children and how to avoid using force and restraint against youth who are not suspected of committing a criminal offense.   The manual blurs the legal distinctions between law enforcement and school security and conflicts with the RSD Code of Conduct which states that school police officers are responsible for "assisting and creating a safe and conducive learning environment in our schools and working in conjunction with Positive Behavior Supports and Interventions."

64.    RSD school police officers receive wholly inadequate training that covers only the appropriate use of firearms and batons. RSD school police officers do not receive training about the use of handcuffs and shackles or about developmentally appropriate responses to elementary school children who fail to follow school rules.

65.    Since as far back as November 2006, the District Defendants have had notice that RSD Schools enforced an unreasonable and excessively intrusive seizure and arrest policy, and

that school police officers lacked the training necessary to comply with the law.  A 2006 news article documented the school police officers' lack of training. Stephon Maloney, *New Orleans High Schools Face Tensions*. New Orleans City Business, November 6, 2006.

66.     Lisa Thurau is the Executive Director of a group called Strategies for Youth.  She is a well-renowned national expert on improving the quality of police and youth interactions. From 2007-2009, Ms. Thurau sent numerous letters to the RSD Superintendent and the Director of Security in which she described accounts of RSD security staffs' use of unreasonable arrests and excessively intrusive seizures.  Through these letters, Ms. Thurau offered her training and consulting services and encouraged the District to take advantage of alternative policing strategies.  Ms. Thurau never received a response to her correspondence.

67.     On June 27, 2008, former Orleans Parish Juvenile Court Chief Judge David Bell sent a letter to Defendant Vallas requesting that the court, the school district, school security, and the police work together to reduce the number of youth who enter the court system for minor charges. Ms. Thurau assisted Judge Bell to compile the information contained in the letter.  In the letter, Judge Bell noted the prevalence of unlawful arrests when he wrote:  "[t]he majority of these cases dealt with minor, normal youth fighting in school.  A fair number of cases involved youth acting out due to unresolved mental health issues and some arrests appeared to result from school officers' decision that the disrespect students show is best cured by an arrest."  Defendant Vallas failed to even respond to this correspondence.

68.     During a BESE meeting held on April 17, 2007 the Juvenile Justice Project of Louisiana ("JJPL") offered testimony concerning the unlawful seizures and arrests of RSD school children.   A JJPL representative testified about three sisters who were handcuffed together to a bench as punishment for allegedly violating school rules.  The JJPL representative

advised BESE that a security guard actually physically sat on the eleven-year-old sister in order to force her to comply with his directives. BESE failed to take any actions to address these complaints. More than three years later, BESE and RSD have utterly failed to ensure that school officials and school police officers receive the training and supervision necessary to comply with federal and state law.

69.     On April 20, 2010, Friends and Families of Louisiana's Incarcerated Children and the National Economic and Social Rights Initiative released a report entitled "*Pushed Out: Harsh Discipline in Louisiana's Public Schools Denies the Right to Education*." This report documented that RSD students are regularly arrested for minor violations of school rules. The report received wide-spread media coverage.

70.     The District Defendants also had specific notice that the Reed Defendants had promulgated and were enforcing an unlawful policy. On May 10, 2010, J.W.'s parents sent Defendant Vallas a letter documenting the abuses J.W. suffered as a result of the policy enforced by the Reed Defendants. Defendant Vallas failed to take any steps to modify the unlawful seizure and arrest policy at Reed Elementary School.

71.     The BESE Board is responsible for the oversight of the Louisiana Recovery School District and the approval and adoption of rules, by-laws, and regulations for the discipline of students. With deliberate indifference to the rights of the students at Reed Elementary School, the BESE Board has failed and continues to fail to ensure that the policies and practices employed at Reed comply with state and federal law. As a result, students are subjected to unreasonable and excessively intrusive seizures and arrests for violations of minor school rules that do not constitute reasonable suspicion or probable cause of criminal activity.

72.     The BESE Board has failed to promulgate policies and practices related to training and operations to protect the rights of Reed Elementary School students against unreasonable arrests and excessively intrusive seizures.  The BESE Board has approved policies that provide wholly inadequate guidance to school police regarding how to lawfully execute arrests and seizures.  The BESE board has also authorized wholly inadequate training for school police officers that fails to provide those officers with the knowledge or skills needed to comply with federal law.  As a direct and proximate cause of BESE's actions, J.W. and members of the proposed class are subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

73.     Despite knowledge that the Reed Defendants enforce a school-wide policy that mandates the unreasonable and excessively intrusive arrests and seizures of students who are alleged to violate minor school rules, BESE has failed to take any action to ensure that the Reed Defendants comply with federal and state law.  As a direct and proximate cause of BESE's actions, J.W. and members of the proposed class are subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

74.     Defendant Vallas is responsible for implementing the policies, programs, and laws affecting RSD-operated public schools.  With deliberate indifference to the rights of the students at Reed Elementary School, Defendant Vallas has failed to ensure that the school's policies and practices comply with state and federal law.  As a result, students are subject to unreasonable and excessively intrusive seizures and arrests for violations of minor school rules that do not give rise to reasonable suspicion or probable cause of criminal activity.

75.     Defendant Vallas has failed to promulgate policies and practices related to training and operations to protect the rights of Reed Elementary School students against

unreasonable arrests and excessively intrusive seizures.  Defendant Vallas has approved policies that provide wholly inadequate guidance to school police regarding how to lawfully execute arrests and seizures.  Defendant Vallas has also authorized wholly inadequate training for school police officers that fails to provide those officers with the knowledge or skills needed to comply with federal law.  As a direct and proximate cause of Defendant Vallas' actions, J.W. and members of the proposed class are subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

76.    Despite knowledge that the Reed Defendants have promulgated and enforce a school-wide policy that mandates unreasonable and excessively intrusive arrests and seizures of students who are alleged to violate minor school rules, Defendant Vallas has failed to take action to ensure that the Reed Defendants comply with federal and state law.  As a direct and proximate cause of Defendant Vallas' actions, J.W. and members of the proposed class are subject to a policy of unreasonable and excessively intrusive arrests and seizures.

77.    Defendant Compass has supervisory authority over all RSD Police Officers.  With deliberate indifference to the rights of the students at Reed Elementary School, Defendant Compass has failed to ensure that the RSD Police Officers are adequately trained and that policy and practice regarding public safety at Reed Elementary School complies with state and federal law.  As a result, students are subject to unreasonable and excessively intrusive seizures and arrests for violations of minor school rules that do not give rise to reasonable suspicion or probable cause of criminal activity.

78.    Defendant Compass has failed to promulgate policies and practices related to training and operations to protect the rights of Reed Elementary School students against unreasonable arrests and excessively intrusive seizures.  Defendant Compass has approved

policies that provide wholly inadequate guidance to school police regarding how to lawfully execute arrests and seizures.  Defendant Compass has also authorized wholly inadequate training for school police officers that fails to provide those officers with the knowledge or skills needed to comply with federal law.  As a direct and proximate cause of Defendant Compass' actions, J.W. and members of the proposed class are subject to an ongoing policy of unreasonable and excessively intrusive arrests and seizures.

79.    Despite knowledge that the RSD Police Officers enforce a policy of unreasonable and excessively intrusive arrests and seizures of students who allegedly violate minor school rules, Defendant Compass has failed to take action to ensure that the Reed Defendants comply with federal and state law.  As a direct and proximate cause of Defendant Compass' actions, J.W. and members of the proposed class are subject to a policy of unreasonable and excessively intrusive arrests and seizures.

80.     By their failure to comply with state and federal law, the District Defendants continue to subject Reed Elementary School students to an unacceptable risk of constitutional violations which manifests in egregious abuses like those suffered by J.W.

81.    Despite knowledge that Reed Elementary School officials have implemented a policy of subjecting students to unreasonable and unlawful seizures and arrests without reasonable suspicion or probable cause of criminal activity, the District Defendants have taken no action to reform the policy and practice at Reed Elementary School.  As a result of this failure, students will be subject to unlawful seizures and arrests at the hands of the Reed Defendants.

## CAUSES OF ACTION

82.     J.W. and the proposed class incorporate by reference all of the above factual

allegations to support the following claims:

### Count I

### DECLARATORY AND INJUNCTIVE RELIEF TO REMEDY
### FOURTH AMENDMENT VIOLATIONS:
### UNLAWFUL ARRESTS

83.     By their foregoing actions and inactions Defendants Vallas, Compass, the BESE

Board, Burnett, Doe and Willis are liable pursuant to 42 U.S.C. § 1983 for sanctioning and

enforcing Reed Elementary School's policy of subjecting school children to unlawful arrests and

seizures for minor violations of school rules absent reasonable suspicion or probable cause of

criminal activity in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

84.     J.W. and the proposed class are entitled to a permanent injunction prohibiting the

Defendants from engaging in the unlawful conduct described herein.

### Count II

### DECLARATORY AND INJUNCTIVE RELIEF TO REMEDY
### FOURTH AMENDMENT VIOLATIONS:
### UNREASONABLE AND EXCESSIVELY INTRUSIVE SEIZURES

85.     By their foregoing actions and inactions Defendants Vallas, Compass, the BESE

Board, Burnett, Doe and Willis are liable pursuant to 42 U.S.C. § 1983 for sanctioning and

enforcing a policy of subjecting students to excessively intrusive seizures consisting of

handcuffing, shackling and chaining school children, including J.W., to furniture for minor

violations of school rules absent reasonable suspicion or probable cause of criminal activity in

violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

86.     J.W. and the proposed class are entitled to a permanent injunction prohibiting the Defendants from engaging in the unlawful conduct described herein.

## Count III

### DAMAGES FOR FOURTH AMENDMENT VIOLATIONS

87.     By their foregoing actions and inactions Defendants Burnett, Doe and Willis are liable pursuant to 42 U.S.C. § 1983 for sanctioning and enforcing a policy of subjecting students to unreasonable and excessively intrusive seizures consisting of handcuffing, shackling and chaining school children, including J.W., to furniture for minor violations of school rules absent reasonable suspicion or probable cause of criminal activity in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.   The actions of these Defendants were intentional, malicious, reckless and showed a callous disregard for the rights of J.W.

88.     J.W. seeks a declaratory judgment, compensatory and punitive damages against these Defendants.

## Count IV

### DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FOR FIRST AMENDMENT VIOLATIONS

89.     By her foregoing actions and inactions, Defendant Burnett is liable pursuant to 42 U.S.C. § 1983 for subjecting J.W. to harassment and retaliation for asserting his right to be free from unlawful and unreasonably intrusive arrests and seizures in violation of the First and Fourteenth Amendments to the U.S. Constitution.

90.      J.W. seeks a permanent injunction prohibiting Defendant Burnett from engaging in the unlawful conduct described herein and compensatory damages against Defendant Burnett.

## Count V

### ASSAULT AND BATTERY IN VIOLATION OF LOUISIANA LAW

91.     By their foregoing actions, Defendants Burnett, Willis, and Doe are liable for the assault and battery of Plaintiff J.W. in violation of Louisiana Law. La. R.S. 14:36; La. R.S. 14:33.

92.     J.W. seeks a declaratory judgment, compensatory and punitive damages against these Defendants.

## Count VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN VIOLATION OF LOUISIANA LAW

93.     By their foregoing actions, Defendants Burnett, Willis, and Doe are liable for the intentional infliction of emotional distress against individually named Plaintiff J.W. in violation of Louisiana Law.

94.     J.W. seeks a declaratory judgment, compensatory and punitive damages against these Defendants.

## Count VII

### FALSE IMPRISONMENT IN VIOLATION OF LOUISIANA LAW

95.     By their foregoing actions, Defendants Burnett, Willis, and Doe are liable for the false imprisonment of Plaintiff J.W. in violation of Louisiana Law. La. R.S. 14:46.

96.     J.W. seeks a declaratory judgment, compensatory and punitive damages against these Defendants.

### NECESSITY FOR INJUNCTIVE RELIEF

97.     The Defendants have acted and continue to act in violation of the law as explained above. The named Plaintiff and the class he seeks to represent do not have an adequate remedy at

law. As a result of the policies, practices, acts and omissions of the Defendants, the named Plaintiff and the class he seeks to represent, have suffered serious, imminent, irreparable physical, mental and emotional injuries.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff respectfully requests that the Court:

1.  Assume jurisdiction over this matter;

2.  Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2);

3.  Declare that the acts and omissions of all Defendants violate the U.S. Constitution;

4.  Declare that the acts and omissions of Defendants Burnett, Willis, and Doe violate state law.

5.  Enter a preliminary and permanent injunction requiring the Defendants, their agents, employees and all persons acting in concert with them to cease their unconstitutional and unlawful practices;

6.  Award compensatory and punitive damages to the named Plaintiff J.W., for the injuries he sustained as a result of Defendants Burnett, Willis, and Doe's actions and inactions.

7.  Award the Plaintiffs the costs of this lawsuit and reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

8.  Grant any other relief the Court shall deem just and proper.

Dated this 8th day of July, 2010.

Respectfully submitted,


s/Thena K. Robinson, La. Bar No. 32229

Sheila A. Bedi, Miss Bar No. 101652*
Poonam Juneja, Miss. Bar No. 103181*
Southern Poverty Law Center
4431 Canal Street
New Orleans, Louisiana 70119
trobinson@splcenter.org
sbedi@splcenter.org
pjuneja@splcenter.org
504-486-8982 (phone)
504-486-8947 (fax)

Carol Kolinchak, La. Bar No. 22495
Juvenile Justice Project of Louisiana
1600 Oretha Castle Haley Boulevard
New Orleans, Louisiana 70113
ckolinchak@jjpl.org
504-522-5437 (phone)
504-522-5430 (fax)

*Pro Hac Vice to be filed